# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-06-00801-CV

**Willis Hale, Appellant**

**v.**

**Gilbert Prud'homme, Appellee**

---

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT**
**NO. D-1-GN-06-000767, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

This dispute arose between appellant, Willis Hale, appearing pro se, and appellee, Gilbert Prud'homme, over the sale of the stock of Independent Review, Inc. (IRI). Both Hale and Prud'homme brought multiple claims against the other. The claims were tried to the court without a jury, and the district court entered a take-nothing judgment on all claims. We affirm the district court's judgment.

### Background

Prud'homme, a lawyer in Austin, founded IRI with Dr. Stuart Damore in 1998. The company began operating as an independent review organization[1] on December 15, 1999.

---

[1] Independent review organizations are certified by the Texas Department of Insurance under insurance code chapter 4202. They provide independent review of health care services that are denied by certain entities regulated by TDI on the basis that the services are not medically necessary or appropriate.

IRI operated out of the same office suite as Prud'homme's law office, sharing equipment and personnel. IRI initially paid Prud'homme a management fee, but ceased payments in June 2004, as IRI became less profitable. Instead, IRI compensated Prud'homme by allowing him to use the office suite free of charge for his law practice and by paying a portion of his law office expenses.

Eventually, IRI shareholders began considering the possibility of selling IRI to a company with more capitalization. Hale was the CEO of a similar Florida-based company called Peer Review Mediation & Arbitration, Inc. (PRMA) and an acquaintance of Damore. Damore introduced Hale to Prud'homme, and the shareholders of the two companies eventually agreed that PRMA would acquire IRI through a stock exchange.

According to the agreement, IRI shareholders would exchange all of the outstanding 148,000 shares of IRI stock for 75,000 shares of newly-issued shares of PRMA stock. The agreement also provided that Prud'homme would resign as IRI's Secretary and Director of Operations but that he would remain in this position "at least until" TDI had approved his successor.[2] Prud'homme was to continue to have access to PRMA/IRI personnel and the use of PRMA/IRI offices. In exchange, Prud'homme would pay PRMA/IRA $1,200 per month in cash or legal services. The agreement also provided for temporary cash support of IRI by PRMA:

> Immediately after the closing hereof, PRMA shall pay up to $10,000 to IRI to help defray operating deficit per month payable on the 10th of each month or weekly

---

[2] TDI rules require biographical information to be submitted and approved for all officers, directors, and executives of an independent review organization. *See* 28 Tex. Admin. Code § 12.103(9) (2008).

2

at PRMA discretion. This assistance shall continue as long as a cash flow deficit exists in IRI operations, including the salaries of Stuart Damore, M.D. and Gilbert Prud'homme.

Prud'homme and Damore were to continue as guarantors of any bank debt that existed on the date of closing. The agreement also provided for unforseen problems with TDI approval:

In the event that such share transaction is not approved by the Texas regulatory agency within a reasonable period of time, the parties may take such necessary and required action to obtain such approval, or alternatively, unwind the contemplated transaction.

This agreement was signed by PRMA and the majority shareholders of IRI on February 11, 2005. Disputes arose as to production and submission of the biographical affidavits required by TDI and as to the payment of law office bills, bank debt, and the $10,000 monthly operations payment. In a letter dated June 1, 2005, Prud'homme notified Hale and PRMA that he and the shareholders of IRI were rescinding the agreement pursuant to its terms.

PRMA/IRI and Hale filed suit against Prud'homme, alleging causes of action for breach of contract, breach of trust agreement, breach of fiduciary duty, fraud, tortious interference with contract/business relationship, and conversion. Prud'homme filed counterclaims for breach of contract, defamation and libel, fraud, and tortious interference with business relations. The parties tried their claims to the court in August 2006. On September 27, 2006, the court entered a final judgment that both parties take nothing. Hale appeals.

*Discussion*

In three issues, Hale argues that the district court erred by ordering that he take nothing on his claims for breach of fiduciary duty, tortious interference, and attorneys' fees. According to Hale, Prud'homme owed a fiduciary duty to Hale as both an officer of IRI and as IRI's general counsel, and Prud'homme breached that duty when he erroneously and fraudulently attempted to rescind the agreement with PRMA. Hale also contends that Prud'homme breached the agreement and that the district court should have awarded damages. In addition, Hale argues that he was the prevailing party and, therefore, is entitled to an award of attorneys' fees.

In arguing that the trial court erred by entering a take-nothing judgment on his claims, Prud'homme is challenging the sufficiency of the evidence to support that judgment. In reviewing a legal sufficiency challenge, we review the evidence in the light favorable to the judgment, crediting favorable evidence if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005). We will sustain a legal sufficiency challenge if the record reveals: (1) the complete absence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence conclusively establishes the opposite of the vital fact. *See id.* at 810. More than a scintilla of evidence exists if the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004). In reviewing a factual sufficiency challenge, we must consider and weigh all the evidence in the record, both in support of and against

4

the finding, to decide whether the judgment should be set aside. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986). We will set aside the judgment for factual insufficiency only if the evidence that supports it is so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001).

*Fiduciary Duty*

Hale argues that Prud'homme breached his fiduciary duty by:

> erroneously attempting to rescind the agreement and keep all of the benefits of the agreement, including PRMA's stock, and the Appellant suffered as a direct and proximate result of the breach because the Appellee was grossing the cash flow of IRI to PRMA's exclusion, $164,323.33 in 2005, alone, for himself and admittedly, using it for his law practice expenditures.

(internal citations to record omitted). Although Hale's argument is not completely clear, the gist appears to be that Prud'homme breached his fiduciary duty by "looting" IRI:

> In summation, the Court's finding that Appellee did not 'loot' IRI, as the term was used, is erroneous based on the Appellee's own testimony, as well as the evidence, and an award for damages is necessary to correct the wrong.

(internal citations to record omitted).

The trial court made the following findings of fact regarding Prud'homme's use of IRI funds:

> 5.   The Agreement for the Exchange of Shares contained provisions that permitted the Law Offices of Gilbert Prud'homme to use and share office equipment and personnel of Independent Review, Inc.

6. The actual use and sharing of Independent Review, Inc.'s equipment and/or personnel by Gilbert Prud'homme and/or the Law Offices of Gilbert Prud'homme after the execution of the Agreement for Exchange of Shares was consistent with and similar to the use and sharing prior to the execution of said agreement.

7. Gilbert Prud'homme did not improperly divert or convert revenue of Independent Review, Inc.

8. Gilbert Prud'homme did not improperly transfer personal debt to Independent Review, Inc.

9. Gilbert Prud'homme did not improperly transfer law office debt to Independent Review, Inc.

10. Gilbert Prud'homme did not improperly remove funds from Independent Review, Inc. Bank accounts and/or improperly transfer any corporate assets of Independent Review, Inc.

Assuming, without deciding, that Prud'homme owed Hale a fiduciary duty, we find sufficient evidence in the record to support the district court's findings of fact and take-nothing judgment. Hale cites to the following evidence to support his position:[3]

- Prud'homme's testimony that he did not return the $26,600 he received from PRMA for operating expenses from February to May under the terms of the agreement.

- Prud'homme's testimony that he did not send back his PRMA stock after to rescind the agreement because he "didn't consider it necessary." Prud'homme further explained that he "considered the transaction as null and void and that there wasn't any necessity of returning the stock. We canceled the stock and notified them that according to their records, they could treat the stock as canceled."

---

[3] Hale also attempts to support his position by citing to court comments and attorney argument, but, as these comments cannot support his sufficiency challenge, we do not include them here.

6

- Hale's own testimony, testimony of Harold Barker, IRI's bookkeeper, and exhibits showing that IRI continued to pay for Prud'homme's law office operating expenses after the agreement was executed according to the terms of the agreement.

In response, Prud'homme points to the following evidence:

- Testimony of Trudie Harkness, IRI's office manager, that expenses paid to the law firm by IRI did not change after the agreement was signed and that Hale was fully aware of the law firm expenses paid by IRI.

- Hale's testimony that he knew that Prud'homme's law practice and IRI shared an office suite and that Prud'homme would have the use of IRI office staff and supplies for the purpose of conducting his law practice.

- Hale's testimony that, prior to his signing the agreement, he was provided with a list of all IRI's expenses, including those paid to Prud'homme's law practice.

- Barker's testimony and financial records from IRI showing that IRI only paid certain expenses for Prud'homme's law practice, including expenses for accounting fees, office supplies, malpractice insurance, Lexis-Nexis, health insurance, telephone expense, client expenses, taxes, and court costs.

The evidence presented by both sides shows that IRI paid for the operating expenses of Prud'homme's law offices under the terms of the agreement, just as it had before IRI and PRMA executed the agreement. The agreement specifically provided for this arrangement to continue, and Hale testified that he understood that IRI would continue to pay law office expenses for Prud'homme. Therefore, assuming that Prud'homme owed a fiduciary duty to Hale, the evidence is both legally and factually sufficient to support the district court's finding

7

that Prud'homme did not breach this fiduciary duty. The district court did not err by entering a take-nothing judgment on Hale's claim for breach of fiduciary duty.

*Tortious Interference*

In his second issue, Hale argues that Prud'homme interfered with or breached the agreement and that the district court should have awarded Hale damages. According to Hale:

> The Trial court, in its findings ruled the attempted rescission was wrong as a matter of law. And, that the Appellee's counsel, in closing, essentially conceded it was not proper under the language of the contract.

Because of the district court's finding, Hale argues, the court was required to award him damages.

Hale does not, however, cite to or quote the particular district court finding to which he refers. A review of the court's findings, conclusions, and judgment reveals nothing that could even arguably suggest that the district court ruled that "the attempted rescission was wrong as a matter of law." Rather, the court found that the agreement "was not rescinded by Gilbert Prud'homme" and entered a take-nothing judgment on each of Hale's claims. Having entered a take-nothing judgment on Hale's claims, the district court did not err in refusing to award damages.

*Attorneys' Fees*

In his third issue, Hale argues that he was the prevailing party and is, therefore, entitled to recover attorneys' fees. We review a district court's refusal to grant a jury trial under

an abuse-of-discretion standard. *Mercedes-Benz Credit Corp. v. Rhyne*, 925 S.W.2d 664, 666 (Tex. 1996). We examine the entire record and will find that an abuse of discretion exists if the trial court's decision is arbitrary, unreasonable, and without reference to guiding principles. *Id.*

Hale cites Rule 131 of the rules of civil procedure for the proposition that—as the prevailing party—he is entitled to recover attorneys' fees from Prud'homme. *See* Tex. R. Civ. P. 131. Even if Hale were correct in his contention that he is the prevailing party, he is not entitled to an award of attorneys' fees. A party who prevails in a lawsuit is entitled to recover attorneys' fees only if permitted by statute or by contract. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310 (Tex. 2006). Hale cites to no statute or contractual provision that might entitle him to recover attorneys' fees, and we find none. The district court acted within its discretion in refusing to award Hale attorneys' fees.

### *Conclusion*

Having found sufficient evidence to support the judgment, we affirm the judgment of the district court.

_____

G. Alan Waldrop, Justice

Before Justices Patterson, Pemberton and Waldrop

Affirmed

Filed: February 11, 2009